IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| 611, LLC | : | |
| | : | |
| v. | : | CIVIL NO. CCB-05-3417 |
| | : | |
| U.S. LUBES, LLC | : | |
| | : | |

...o0o...

**MEMORANDUM**

Plaintiffs 611 LLC ("611") and American First Management, Inc. ("American First") have filed a motion to remand this case to state court. The issues have been fully briefed and no hearing is necessary. *See* Local Rule 105.6. For the following reasons, the motion will be granted.

I.

The plaintiffs originally filed this action in the Circuit Court for Baltimore City in November 2005, alleging mismanagement of U.S. Lubes by its majority shareholder, U.S. Lubes Investors LLC ("Investors"), and by several individual managers, William Packer, Sr., William Packer, Jr., Robert Ayerle, and David F. Wrubel. The plaintiffs bring direct claims for (1) breach of duty of loyalty, (2) breach of contract, and (3) denial of access to records; derivative claims for (1) breach of duty of loyalty/self-dealing and (2) breach of duty of loyalty by Wrubel as counsel for U.S. Lubes; and a petition for involuntary dissolution. The plaintiffs' central allegation is that Investors credited a $410,000 loan made to U.S. Lubes twice in calculating its equity, once at the company's formation in July 2000 and again in July 2003, thereby diluting the plaintiffs' interest. (*See* Compl. ¶¶ 18-21.) In December 2005, the defendants removed the

1

case to this court, invoking its diversity jurisdiction.  *See* 28 U.S.C. § 1332.  U.S. Lubes filed an answer, whereas Investors and the individual defendants filed a motion to dismiss for lack of personal jurisdiction.  The plaintiffs then filed a motion to remand, arguing that complete diversity is not present.[1]

Most of the facts relevant to jurisdiction are not in dispute.  The amount in controversy exceeds $75,000.  U.S. Lubes is properly aligned as a defendant for diversity purposes.  *See Beck v. CKD Praha Holding, A.S.*, 999 F.Supp. 652, 655 (D.Md. 1998).  The two plaintiffs are citizens of Maryland.  No individual defendant is a citizen of Maryland, nor is Investors.[2]  The parties agree on the proposition that, for the purposes of diversity, an LLC possesses the citizenship of each of its members.  *See General Tech. Applications, Inc. v. Exro LTDA*, 388 F.3d 114, 121 (4th Cir. 2004) ("[An LLC] is an unincorporated association, akin to a partnership for diversity purposes, whose citizenship is that of its members."); *JBG/JER Shady Grove, LLC v. Eastman Kodak Co.*, 127 F.Supp.2d 700, 701 (D.Md. 2001); *see also Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 586 n.1 (2004) (Ginsburg, J., dissenting) ("Although the Court has never ruled on the issue, Courts of Appeals have held the citizenship of each member of an LLC counts for diversity purposes").[3]  The dispositive question, therefore, is whether either 611 or

---

[1] Because the court will remand the case, it need not address the personal jurisdiction issues.  *Cf. Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588 (1999) (district courts have discretion to address personal jurisdiction before considering remand motion in appropriate circumstances); *Lolavar v. De Santibanes*, 430 F.3d 221, 227-28 (4th Cir. 2005).

[2] Packer Sr., Packer Jr., and Ayerle are citizens of Pennsylvania.  Wrubel is a citizen of New York. Investors is a citizen of Pennsylvania and California.

[3] As an alternative basis for their position, plaintiffs have argued for an understanding of LLC "members" in this context that includes all "owners."  Because the court rests its conclusion on other grounds, it will not assess this theory.

American First qualifies as a "member" of U.S. Lubes for diversity purposes.  If so, then U.S. Lubes is a citizen of Maryland, complete diversity does not exist, and the court lacks jurisdiction.  *See C.T. Carden v. Arkoma Assoc.*, 494 U.S. 185, 187, 195-96 (1990).

Although this inquiry requires close factual and textual analysis and there is not much relevant caselaw, the court is guided by a few important principles.  Because they are seeking removal, the defendants have the burden of demonstrating that subject matter jurisdiction exists. *Mulcahey v. Columbia Organic Chem. Co.*, 29 F.3d 148, 151 (4th Cir.1994).  Because removal jurisdiction raises significant federalism concerns, the court must strictly construe removal jurisdiction, and remand where federal jurisdiction is in doubt.  *Id*.  These principles suggest that, in general, ambiguities should be resolved in favor of the plaintiffs.

II.

U.S. Lubes was organized in July 2000 as a limited liability company under Delaware law.  The U.S. Lubes Operating Agreement ("Agreement," Compl., Ex. 1) was signed by Investors, Kendall Energy Group, LLC ("Kendall"), Steven Rivera, Robert Sikora, Robert Smith, and American First.  Membership in U.S. Lubes is governed by the Agreement and Delaware law.  *See* Del. Code Ann. Tit. 6, § 18-301 (after the initial formation of an LLC, a non-member can become a member "upon compliance with the limited liability company agreement").

The Agreement's definition of "Member" includes three categories: Initial Member, Substitute Member, and Additional Member (§ 1.30).[4]  There were two Initial Members: Investors and Kendall, the latter of which transferred its interest simultaneously to Rivera,

---

[4] All citations to section numbers refer to the Agreement.

Sikora, Smith, and American First, collectively the "Kendall Members." An entity can only become an Additional Member by acquiring its interest directly from the company (§ 1.3), so this designation is not relevant here.

A Substitute Member is defined as "an Assignee who has been admitted as a Member pursuant to Section 12.2" (§ 1.35). An Assignee is defined as "a Person to whom an Interest has been Disposed and who shall not have become a Substitute Member at such time" (§ 1.7).[5] The Agreement later states: "An Assignee has no right to exercise any rights or powers of a Member or, except, in accordance with Section 10 and Section 12.2, to become a Member" (§ 12.1).[6] The Agreement thus expressly recognizes situations in which an entity can possess a financial interest in the company without possessing the rights of a member.

Section 12.2.1 reads:

An Assignee of a[n] Interest shall be admitted as a Substitute Member and admitted to all the rights of the Member who Disposed an Interest to such Assignee only upon (a) the approval of a Majority of the Members unless such Disposition was in accordance with the provision of Section 10 and (b) upon such Assignee's execution and delivery of an Admission Agreement. The Members may grant or withhold the approval of such admission for any reason in their sole and absolute discretion. If so admitted, the Substitute Member shall have all the rights and powers and be subject to all the restrictions and liabilities of the Member which shall have Disposed an Interest to such Substitute Member to the extent of the Interest so disposed....[7]

---

[5] A "disposition" is defined as "any sale, assignment, transfer, exchange, mortgage, pledge, grant, hypothecation, or other transfer (absolute or as security) or encumbrance (including dispositions by operation of law)" (§ 1.19).

[6] The section on voting rights also states: "Units of an Assignee which has not become a Substitute Member shall not be entitled to vote on any matter and shall not be considered in determining a Majority of the Members" (§ 3.2).

[7] Section 12.2.2 addresses the disposition of Kendall's interest to the Kendall Members. It states that the Agreement functions as the necessary Admission Agreement, thereby conferring Substitute Member status on the Kendall Members.

An "Admission Agreement" is defined, in relevant part, as: "[T]he agreement entered into between...a Substitute Member...and the Company upon admission thereof as a Member pursuant to...Section 12.2...pursuant to which, *inter alia*, such...Substitute Member shall become a party to this Agreement" (§ 1.4).

Section 10, which covers Disposition of Interests, lists a category of "Permitted Dispositions," among which is "Dispositions from a Member to an Affiliate of such Member" (§ 10.2(c)). Among the subcategories of Affiliate is the following: "with respect to any entity (including a corporation, a limited liability company or a partnership) any person or entity directly or indirectly, controlling, controlled by or under common control with, such person or entity..." (§ 1.5(c)).

The Agreement imposes an additional requirement on any valid disposition: "In the event a Disposition shall be made, there shall be filed with the Company a duly executed and acknowledged counterpart of the instrument making such Disposition. Such instrument must evidence the written acceptance by the Assignee of all the terms and provisions of this Agreement. If such an instrument is not so filed, the Company need not recognize any such purported Disposition for any purpose" (§ 12.3(d)).

Section 12.3 also states that "[a]ny Member who shall Dispose of all of his Interest shall cease to be a Member and shall no longer have any rights or powers of a Member" (§ 12.3(b)).

III.

U.S. Lubes is managed by a board of seven managers; Investors has the right to choose four, while the remaining members choose three (§ 5.1). When U.S. Lubes was formed, Investors

appointed defendants Packer Sr., Packer Jr., Ayerle, and Wrubel, while the remaining members, including American First, appointed Smith, Sikora, and James F. Clements.

Clements was the Vice President of American First from 1998 through 2004 and has been the Vice President of 611 since 2003. (Affidavit of James F. Clements ¶¶ 2-3, Pls.' Mot., Ex. 2.)  On December 23, 2003, Clements sent a letter to U.S. Lubes, attention William Packer (whether Sr. or Jr. is unclear), on the letterhead of an entity called "1st Financial, Inc.," which read:

> Dear Bill,
>
> Please be advised that American First Management, Inc. conveyed its interest in US Lubes to 611 LLC.  I would sincerely appreciate you re-issuing the partnership interest in US Lubes to reflect this change.
>
> I am not aware that any partnership certificates evidencing ownership were issued by American First Management, Inc.  Thank you for your help in this matter.
>
> Sincerely,
> James F. Clements

(Pls.' Mot., Ex. 1.)  Neither party has produced any other documents related to the disposition between American First and 611.  Plaintiffs assert that the two entities were under the "common control" of Susan M. Ruberg at the time, which defendants do not contest. (*See* Clements Aff. ¶¶ 5-7.)  Accordingly, the two entities qualify as "Affiliates" under the Agreement and the transfer was a "Permitted Deposition" under § 10.2.  Defendants do not dispute, therefore, that 611 is at least an Assignee.

The defendants contend, however, that to go from being an Assignee to a Substitute Member, 611 needed to file (1) a counterpart to the instrument transferring the interest (§ 12.3(d)) and (2) an Admission Agreement (§ 12.2.1), but it failed to file either.   The plaintiffs

barely mention the transferring instrument requirement of § 12.3(d) in their filings. On the one hand, this seems to be an admission that they never filed such an instrument; they do not argue that Clements' letter qualifies. On the other hand, a careful reading of the Agreement reveals that this provision is not a requirement for becoming a Substitute Member *per se*. Section 12.3(d) states that for all Dispositions, such an instrument "shall" be filed, and notes that if one is not filed, the company "need not recognize any such purported Disposition for any purpose." Here, however, the company clearly *did* recognize the transfer as valid, inasmuch as it has considered 611 to be at least an Assignee. For example, the company filed tax documents reflecting 611's financial interest in U.S. Lubes, as discussed below. Moreover, the company did not continue to treat American First as a member or as retaining a financial interest. Instead, the defendants assert that American First ceased being a member immediately upon the disposition under § 12.3(b), which would not be the case if the transfer was not valid.[8] Although the language of section 12.3(d) gives the company wide discretion in this context, it would be internally inconsistent, if not impermissible, for U.S. Lubes to recognize the disposition as valid for the purposes of cutting off American First's interest and creating Assignee status in 611, but somehow not valid for the purposes of 611's membership status. In other words, to the extent the company recognized the disposition as valid for creating Assignee status in 611 – despite the lack of the transferring instrument – the only remaining requirement for 611 to become a

---

[8] Section 10.1 states that, except under circumstances irrelevant to this case, "no Member may Dispose of all or any portion of such Member's Interest...except as expressly provided for" in section 10. For defendants to assert that American First is no longer a member, U.S. Lubes must have recognized American First's transfer of interest to 611 as valid under section 10.

7

Substitute Member was the Admission Agreement.[9]

The plaintiffs argue that Clements' letter satisfied the requirements for an Admission Agreement. On the one hand, as the defendants emphasize, § 1.4 does define an Admission Agreement as a document reflecting an agreement *between* the company and the Substitute Member. On the other hand, § 12.2.1 states that an Admission Agreement should be "execut[ed] and deliver[ed]" by the Substitute Member, suggesting that it is a unilateral, relatively *pro forma* document, at least where the disposition did not require the approval of a majority of the members.[10] Moreover, Clements' letter was not a mere declaration of a *fait accompli*; it requested action on the part of U.S. Lubes, namely re-issuing "the partnership interest." This request manifested an intent that 611 replace American First as a member of U.S. Lubes.[11] *See In re American Tax Credit Props. Ltd. P'ships*, 714 A.2d 87, 93 (Del.Ch. 1997) (emphasizing that the relevant forms demonstrated the entity's intent to become a substitute limited partner, and distinguishing *Monterey Invs., Inc. v. HealthCare Props., L.P.*, 1997 WL 367038, at *7

---

[9] Plaintiffs make a subsidiary argument that if 611 failed to become a Substitute Member, then American First must have remained a Member. The Agreement, however, clearly contemplates a scenario in which a member transfers its interest and loses its membership status, while the new entity only acquires the status of an Assignee, not of a Substitute Member. The plaintiffs' point, however, supports the argument that once the company recognized the transfer as valid for the purposes of cutting off American First's interest, then it must have recognized that 611 became at least an Assignee. If U.S. Lubes considered the disposition to be wholly invalid, then American First would indeed still be a member.

[10] Under section 12.2.1, a Substitute Member does not need such approval if the disposition comported with section 10, which this transfer did.

[11] It does not appear from the record that U.S. Lubes ever responded to Clements' letter or this request in particular. To the extent Clements reasonably believed his letter complied with the Agreement, and U.S. Lubes did not respond by either formally recognizing 611's membership status or by requesting additional documentation, it seems that 611 should not be faulted for U.S. Lubes' inaction.

(Del.Ch., June 26, 1997) on these grounds). Finally, the ambiguity of what constitutes an Admission Agreement is reinforced by section 12.2.2, which states that the Agreement itself serves as the Kendall Members' Admission Agreement.

IV.

The plaintiffs next present several factual bases for asserting that U.S. Lubes has treated 611 as a member. While no individual instance constitutes ironclad proof, together they generate persuasive evidence that U.S. Lubes has considered 611 to be a member since Clements' letter and has changed its position only for the purposes of this litigation. At the very least, U.S. Lubes has never clearly indicated until now that it has only considered 611 to be a mere Assignee. *See Carbine v. Xalapa Farm Ltd. P'ship*, 980 F.Supp. 860, 864 (E.D.La. 1997) (looking to extrinsic evidence of the parties' conduct to interpret ambiguous contractual requirements for becoming a limited partner); *see also Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 2000 WL 1597909, at *6-9 (Del.Ch., Oct. 20, 2000).

The first document to which the plaintiffs refer is a U.S. Lubes balance sheet for 2003. (Pls.' Mot., Ex. 3). Under liabilities, the document lists a line for "Members' Capital," but there is no line for "Non-Member Capital" or the equivalent. Therefore, plaintiffs contend, the company must have considered whatever portion of the $443,071 was attributable to 611 to be member capital; had U.S. Lubes considered 611 to be a mere Assignee, it would have separated out 611's capital from this category. In addition, the plaintiffs have presented tax documents filed by U.S. Lubes which refer to 611 as a member. (Pls.' Mot., Exs. 4-6.) The defendants respond that because these forms are pre-printed, U.S. Lubes had to use forms and/or check

9

boxes that most closely approximated 611's status. Nonetheless, it appears that U.S. Lubes made no effort to clarify its view of 611's status on these forms or elsewhere.

Plaintiffs also place emphasis on a September 2005 letter, sent by one of the Packers to five of the other managers, including Clements, which discussed a proposed capital contribution request.  (Pls.' Mot., Ex. 8.)  Plaintiffs attached a later email from Wrubel, where he refers to the letter having been sent "to the memebrs [sic] of US Lubes." (Pls.' Mot., Ex. 9.)  Plaintiffs contend that the Agreement only allows the company to solicit capital contributions from Members.  *See* § 6.2.

Similarly, that Clements remained a manager after the disposition also bolsters the view that U.S. Lubes considered 611 to be a member.  Although the Agreement does not indicate what happens to a manager if the member that elected him ceases to hold that status, the document as a whole establishes a strong connection between members and the managers they elect.  *See* § 5.1 ("In the event of any vacancy on the Board of Managers, the vacancy shall be filled by the Member which elected the Person who last filled such position."); § 5.6 ("A Manager may be removed at any time by the Member which elected such Manager.").  It seems unlikely that U.S. Lubes would have tolerated Clements' continued presence on the board had it considered him to be representing a mere Assignee.  *See* § 3.2 (providing that an Assignee has no voting rights).

V.

In light of the Agreement's ambiguities and the parties' conduct, the plaintiffs had reasonable grounds for believing then, and claiming now, that 611 satisfied the requirements for becoming a Substitute Member of U.S. Lubes.  Although 611 could have sought formal

confirmation of this proposition, U.S. Lubes acted in a manner consistent with 611's perceived status as a member until this litigation commenced. Especially considering the defendants' burden of demonstrating subject matter jurisdiction, 611 has advanced a reasonable basis for contending that it is a member of U.S. Lubes, and defendants' inconsistent, if not inequitable, position to the contrary does not persuade the court otherwise.[12]

The court therefore considers 611 to be a member of U.S. Lubes for the purposes of diversity in this litigation, meaning that both are Maryland citizens.[13] Accordingly, complete diversity is not present and the court lacks jurisdiction. *See Carden*, 494 U.S. at 195-96; *see also Nat'l Ass'n of State Farm Agents, Inc. v. State Farm Mut. Auto. Ins. Co.*, 201 F.Supp.2d 525, 531 (D.Md.2002). The court will thus remand the case to the Circuit Court for Baltimore City.[14]

---

[12] In reaching its conclusion, the court does not, and need not, rely on the formal doctrines of estoppel or waiver. *See Monterey Invs.*, 1997 WL 367038, at *4 ("Th[e] equitable doctrine [of estoppel] may be invoked when a party by his conduct intentionally or unintentionally leads another, in reliance upon that conduct, to change position to his detriment.") (quotations omitted). Instead, the court has proceeded by interpreting a reticulated but ambiguous contract in light of the parties' conduct, principles of equity, and the presumptions flowing from the procedural posture of the case.

[13] The court wishes to clarify that this ruling cannot be considered binding on the parties in all aspects of their private contractual relationship, e.g. the determination of 611's formal status, rights, and duties under the U.S. Lubes agreement.

[14] Plaintiffs have requested an award of attorney's fees pursuant to 28 U.S.C. § 1447(c). Because the motion to remand has raised a novel and complex question, and there was no evidence of bad faith in the removal, this request will be denied. *See Nat'l Ass'n of State Farm Agents*, 201 F.Supp.2d at 531 n.12.

A separate Order follows.


   July 18, 2006                                                                     /s/              
       Date                                                                           Catherine C. Blake
                                                                                     United States District Judge